Elsie P. Grimes v. Commissioner. Estate of Coble E. Grimes, Deceased, Elsie P. Grimes, Executrix v. Commissioner.
Grimes v. Commissioner
Docket Nos. 48733, 48734.
United States Tax Court
T.C. Memo 1954-219; 1954 Tax Ct. Memo LEXIS 25; 13 T.C.M. (CCH) 1119; T.C.M. (RIA) 54325; December 15, 1954, Filed *25 Raymond Gittelman, Esq., National Press Building, Washington, D.C., for the petitioners. Paul E. Waring, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in gift tax for 1949 of $2,347.34 against Elsie P. Grimes and $22,761.40 against Coble E. Grimes, Deceased, Elsie P. Grimes, Executrix. The Commissioner determined that Coble had given a 1/3 interest in College Hill Poultry Company, a partnership, to his son, John, and a 1/2 interest in the same business to his wife, Elsie, and further determined that Elsie had given a 1/3 interest in the same partnership to her son, John. The petitioners contend that Coble and Elsie were equal owners of the business in September 1949, at the time the gifts were made, and each gave a 1/6 interest in the business to their son, John, so that thereafter the three were equal partners, each owning a 1/3. Findings of Fact Elsie P. Grimes and Coble E. Grimes were married in 1927, and immediately thereafter joined together in operating a poultry business and continued to engage in that business until Coble's death in October 1950. They lived in Fredericksburg, Pennsylvania, *26 as husband and wife during all of that period, except that Coble left Elsie and lived for about 14 months in 1944 and 1945 with another woman in Lebanon, Pennsylvania, after which he returned to Fredericksburg and continued to live with Elsie until his death. They had no written agreement with respect to the ownership and operation of the business prior to September 1949. They both devoted all of their time to the business, except that illness curtailed Coble's activities during the last five or six years of his life. They both contributed substantial sums of money to the business. They were equal owners of the business in September 1949, and during that month each gave a 1/6 interest in the business to their son after which the three entered into a written partnership agreement as equal partners. Coble and Elsie each filed a gift tax return for 1949 with the collector of internal revenue for the first district of Pennsylvania, in each of which a gift of 1/3 of the business to their son, John, was reported at a value of $62,135.97, and on each of which the other spouse endorsed consent "to have the gifts made by both me and my spouse to third parties during the calendar year considered *27 as having been made one-half by each of us." Only 1/2 of the reported value of the gift of the 1/3 interest in the poultry business was used in computing the tax on each return. Amended returns were filed later but without change in reporting the gift to the son of a 1/3 interest in the poultry business. The Commissioner, in determining the deficiency against Elsie, held that the value of a 1/3 interest in the poultry business was $128,802.63, and in computing the deficiency used 1/2 of that amount. The Commissioner, in determining the deficiency against the estate of Coble, held that the value of a 1/3 interest in the poultry business represented by the gift to the son was $128,802.63 and also held that the petitioner had made a gift of a 1/2 interest in that business to his wife, Elsie, the value of which was $193,203.96. He further held that the total gifts made by Coble during the year amounted to $322,006.59, from which he deducted $64,401.31 as the "portion reported by spouse." Coble made no gift of an interest in the poultry business to Elsie during 1949. The value of the 1/3 interest in the poultry business given by Elsie and Coble to their son, John, in 1949 was $112,000.00. *28 Opinion MURDOCK, Judge: The Commissioner concedes that his determination against the estate of Coble was incorrect in so far as it held that Coble had made a gift of a 1/2 interest in the poultry business to his wife, Elsie. The Commissioner's contention here is that Coble gave a 1/3 interest in the business to Elsie, his wife, and a 1/3 interest in the business to John, his son. The petitioner's contention is that Elsie and Coble were equal owners of the business in September 1949, at which time they joined in giving a 1/3 interest in the business to their son. The evidence shows that Elsie invested money in the business at its inception, and thereafter devoted her full time to the business and from time to time made further contributions of capital to the business. The evidence shows the nature of the services contributed by her. Those contributions were most substantial and were not interrupted except for a very short time when the son was born. Elsie had control over the finances of the business with Coble except for a short interval to be mentioned later. The evidence indicates that Elsie's contributions of services and capital to the business over the years compared favorably *29 with those of Coble. She worked very hard and took little out of the business. Her personal wants were few and she was content to have most of the profits remain in the business. There is evidence which is somewhat inconsistent with Elsie's contention that she was a full partner or the owner of one-half of the business prior to the gift to their son. Coble wanted to exaggerate his own importance by giving the impression that the business was his own and the evidence to which reference has been made stems largely, if not entirely, from his vanity. He also attempted to shut his wife off from control of the business during the months that he was living with another woman but even during that period she continued to give her attention to the business while awaiting his return. The evidence requires the conclusion that Elsie, at all times, up to the date of the gift to the son, was an owner of the business with her husband and that she could have established her rights in that respect at any time if she had felt any necessity for so doing. The Commissioner admits that his determination against Coble was incorrect in so far as it held that Coble had made a gift of 1/2 of the business to *30 Elsie, and his present contention that Coble gave 1/3 of the business to Elsie in 1949 is refuted by a preponderance of the evidence. The question of the value of a 1/3 interest in the business which the son received by gifts from his parents in 1949 is the only other matter requiring decision. The $62,135.97 which the petitioners reported as the value of the 1/3 given to their son represented 1/3 of the book net worth of the business as of the end of September 1949. The Commissioner added $66,666.66 to that to arrive at his value of $128,802.63 for the 1/3 interest. The amount was added to represent 1/3 of the value of good will in the amount of $200,000. Exhibit T, introduced by the Commissioner, shows how the $200,000 value for good will was computed. The Commissioner accepted the valuation of the examining officer. Exhibit T contains figures supposed to represent invested capital, sales and net earnings before taxes of the business for 4 3/4 years beginning with 1946 and ending on October 2, 1950, the date on which Coble died, which was a little over a year after the gift was made. The invested capital figures and the net earnings figures on Exhibit T vary, to the taxpayers' *31 disadvantage, from figures shown on balance sheets and returns also introduced by the Commissioner. The figures on Exhibit T appear to be incorrect. The computation does not take into account the facts that sales and earnings of this business had been declining for some years prior to September 1949 and competition had been increasing. The decline of the business during the illness of Coble is some indication that the personal attention of husband and wife to the business was an important factor aside from any good will or salary allowance. The book value of the business at the end of September 1949 was $186,407.91. The evidence indicates by a fair preponderance that the valuation of the 1/3 interest used by the Commissioner is unreasonable and excessive. Neither party has introduced any opinion evidence on the subject of value. The Court, being satisfied that the Commissioner's determination is too large is forced to arrive at some lesser value on the record before it. That evidence is inadequate for the purpose and has required the Court to bear most heavily upon the petitioners, who had the burden of proof. . Decisions will *32 be entered under Rule 50.